[No. 39701.    Department Two.    March 28, 1968.]

BARBARA  M. HOREN, *Appellant*, v.  DWIGHT  JOHN
HOREN, *Respondent*.*

*Welts & Welts*, by *David A. Welts*, for appellant.

*Bannister, Bruhn & Luvera*, by *Stanley K. Bruhn*, for respondent.

LANGENBACH, J.†—At the end of a tortuous trail of some 1,100 pages of a statement of facts, with 20 exhibits, 350

*Reported in 438 P.2d 857.

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

pages of depositions, and the contradictions of 56 witnesses during 8 trying days of litigious testimony was a simple divorce action. Three primary objectives were involved: the divorce, the custody and support of 4 minor children, and the division of community assets.

Plaintiff first sued for separate maintenance, but after defendant moved for a summary judgment, plaintiff amended her claim for a divorce. Defendant counterclaimed for a divorce. From the testimony and attitude of the parties displayed during the proceedings, each was granted a divorce. This is not an issue in the case.

The parties were married in 1950, when the husband was a student seeking to become a pharmacist. The wife worked to assist in this endeavor until the birth of their first child. After he graduated they went to Skagit County, where he worked in various drugstores. In 1962, he opened his own pharmacy in Burlington, with some financial aid furnished by plaintiff's mother. In the meantime, his business has flourished.

The family consists of three girls, aged 13, 11, and 10, and a boy, aged 7, at the time of trial.

But the family life seemed to deteriorate. Defendant devoted much time both days and evenings to his business enterprise to the manifest neglect of plaintiff. Plaintiff attended some classes in religious instruction evenings with women friends, and often departed therefrom to go to a cocktail lounge or other places where liquor was served. The children would be left at home with a baby-sitter until the defendant would return from his place of business.

After a rather unpleasant incident in July, 1964, defendant refused further to take his wife out into society or visit friends with her. His complaint was that she drank too much liquor and spent too much time in cocktail lounges to the neglect of the children. Her contention was that he became too indifferent towards her and neglected her for his business and his own pleasures.

After the divorce action was commenced, plaintiff sought temporary relief. Testimony was taken, after which the

children were awarded the defendant on the basis that liquor seemed more important to plaintiff than the welfare of her children. Three weeks later, the matter of custody was reconsidered, and plaintiff was allowed their custody pendente lite. Soon, because of economic factors, both parties were permitted to reside in the family home in separate quarters pending the outcome of the litigation.

At the end of the trial, the court rendered a comprehensive oral opinion. It found that during the past 2 years the wife had indulged in intoxicating liquor to excess rather than take care of her home. It felt that with the restraint of the case removed, she might resume her habit of drinking and frequenting cocktail lounges. Consequently, the court determined that the best interests and welfare of the children would be served by awarding their custody to defendant, with very liberal visitation rights to the plaintiff.

The family home, with a very substantial mortgage on it, and the pharmacy were the main community possessions. The plaintiff was granted specified personal assets together with a cash award of $33,000 to be paid in definite installments and secured for her by a charge against the pharmacy. She was also allowed her costs, substantial attorney's fees, and alimony on a sliding scale over a period of 5 years in order that she might rehabilitate herself for business employment. The defendant was ordered to pay all liabilities and to establish a trust fund from the proceeds of $6,000 for the children's education.

The remainder of the assets and the pharmacy were awarded the defendant.

From a decree carrying out the provisions of the oral decision, plaintiff has appealed. There are 5 assignments of error leveled against 13 findings of fact, which findings are not set forth in her brief. While these findings against which errors are asserted are not set forth in full, nevertheless, so much of each finding as is claimed to be erroneous was set forth in accordance with ROA 43. In this manner this court's attention was directed to these specific parts of these findings towards which particular errors were assigned. Consequently thereby the provisions of ROA 43 have been

met after a fashion. However, we would make it clear that we do not "like the fashion," and prefer that findings of fact to which an exception is being taken be set forth in their entirety. They concern two main issues—the custody of the children and the division of the community property.

The trial court found that appellant had engaged in excessive use of alcohol and had shown greater interest in attending cocktail lounges than she had in staying home and being a mother. It also found that, in 2½ years, she had attended such drinking establishments on 45 occasions, and had been doing quite a bit of drinking with her sister.

One finding stated:

> The evidence shows that plaintiff did not cease her drinking until the court forced her to cease and issued an order; the court is unable to conclude that plaintiff will not commence her activities and conduct with respect to visiting cocktail lounges and drinking once this matter is concluded and the court's pressure is off her.

And another:

> The court does not know what may happen in that case. It would be an experiment if the court placed the custody of the children with her with respect to whether she would once again commence the consuming of alcohol or frequenting cocktail lounges.

The evidence did not disclose any occasion when appellant became actually drunk or intoxicated. Its greatest import was that she had gone on these occasions with women friends and had consumed one or more drinks of liquor. There was no proof of any unseemly or unbecoming conduct or actions on her part. There was no evidence whatsoever that, after she had received the temporary custody of the children during the pendency of the litigation, she had partaken of any intoxicating liquor. Apparently, she had learned a hard lesson.

■ ■ There was no finding of unfitness on the part of either parent. The experienced trial judge appeared more concerned over the *future* possibilities which might arise affecting the lives of these children. The future welfare of children is the paramount consideration of the courts.

These considerations have been aptly stated and summarized in the recent case of *Silverton v. Silverton,* 71 Wn.2d 276, 277, 427 P.2d 1001 (1967):

In addition, however, in *Chatwood v. Chatwood,* 44 Wn.2d 233, 239-40, 266 P.2d 782 (1954), the court said:

In reviewing the long line of custody decisions of this court, several significant guiding principles or considerations emerge. From time to time these may serve to aid the trial courts and this appellate court in meeting the responsibility of attempting to resolve problems of child custody. These guiding principles and considerations, gleaned from previous child-custody decisions, might be outlined somewhat as follows:

1. Each case must be considered and determined separately, upon its own facts and the situation before the court;

2. The best interests and welfare of the children in custody matters are the paramount and controlling considerations. The interests of parents, including claims of the right to child custody, are subsidiary in relation to consideration of the welfare of their children;

3. Those factors usually inherent in the mother-child relationship must be considered in relation to the age and sex of the children. However, in this connection, socially desirable traits of character, emotional maturity, economic ability or stability of the mother, cannot be disregarded;

4. The findings of the trial courts will be accepted as verities on appeal, unless the record evidence clearly preponderates against such findings;

5. Trial courts must necessarily be allowed broad discretion in custody matters, because so many of the factors to be considered can be more accurately evaluated by the trial judge, who has the distinct advantage of seeing and hearing witnesses, and is in a better position to determine their credibility, than the members of an appellate court, who have access only to the printed record on appeal, and to the briefs and argument of counsel.

The court has painstakingly read the voluminous statement of facts, the record, and the transcript, including the very comprehensive findings of fact. The record dis-

closes three young girls approaching the dangerous years of entering into the maturity of womanhood. If ever a mother's loving care and maternal counsel was needed, that time is rapidly nearing. One author has stated:

> A mother's care and influence is regarded as particularly important for children of tender age and girls of even more mature years. It is generally conceded that these children will be reared, trained and cared for best by their mother. Accordingly, the courts will ordinarily award the custody of children of tender age, especially girls, to their mother, unless it is clearly shown that she is not a fit and proper person to have the custody of her child, or that the best interests of the child will be far better subserved by placing it in the custody of some other person.

> The courts are very reluctant to deprive a mother of the custody of her daughter, doing so only in unusual circumstances, and will usually give the mother a preference in awarding the custody of a girl of a more mature age, unless it appears that the welfare of the child will be promoted by awarding its custody to some other person. 2 W. Nelson, Divorce and Annulment § 15.09 at 228-32 (2d ed. 1961).

One vital fact in appellant's favor was her willingness to have the trial judge interview her children. This did not seem agreeable to the respondent. The wishes and desires of these three young girls, of the age of discretion, may be given consideration by the courts. *Nelson v. Nelson,* 43 Wn.2d 278, 260 P.2d 886 (1953). This did not occur in this action.

The careful scrutiny of the entire record, the absence of any apparent deficiency or unfitness of the appellant, save for her periodic drinking habits in the past, with her complete abstension during the pendency of the litigation, lead to the considered conclusion that there has been a manifest abuse of discretion on the part of the trial court in depriving appellant of the custody of her children.

Inasmuch as the case must be remanded to the trial court for a modification so far as the custody of the children is concerned, further attention must be given to the allowance for the support of the children. It appears from the record

that $150 per month per child during minority or until emancipation might be reasonable.

In the light of these changes in circumstances, the trial court is further directed and empowered to reassess the rights of the parties in and to the community property so far as making an equitable division between the parties due to the change of custody.

Accordingly, the decree so far as the custody of the children is involved is modified as herein expressed. The entire case is remanded to the Superior Court for Skagit County for the modification of the decree in the particulars indicated herein; and to make such further findings and decree not inconsistent with the views herein expressed. It is so ordered.

FINLEY, C. J., HAMILTON and NEILL, JJ., concur.

HILL, J. (dissenting)—I dissent. The basis of my dissent is well stated in an excerpt from *Chatwood v. Chatwood*, 44 Wn.2d 233, 240, 266 P.2d 782 (1954), quoted in part on page 459 of the majority opinion.

Trial courts must necessarily be allowed broad discretion in custody matters, because so many of the factors to be considered can be more accurately evaluated by the trial judge, who has the distinct advantage of seeing and hearing witnesses, and is in a better position to determine their credibility, than the members of an appellate court, who have access only to the printed record on appeal, and to the briefs and argument of counsel.

In the instant case, the significant evidence of the contending parties is in absolute conflict. If we were the triers of fact and were making an initial determination here, we might very well decide in favor of the appellant's contentions. A decision depriving this mother of the custody of her minor daughter certainly is not an easy one. It is difficult and disturbing, and we are reluctant to reach that result. However, considering the situation in this case as it was presented to the trial court, and the fact that it has been presented to that court and a decision reached, and considering all that we have said hereinbefore, it is our best judgment that the custody disposition made by the trial court in this case should not

be disturbed. The judgment is in all respects hereby affirmed.[1]

I would affirm the trial court.

July 25, 1968. Petition for rehearing denied.

---

[1] Quoted and followed in *Silverton v. Silverton*, 71 Wn.2d 276, 277, 427 P.2d 1001 (1967).